# THE PEOPLE OF THE STATE OF NEW YORK *v.* E. REMINGTON & SONS.

## IN THE MATTER OF THE CLAIM OF THE ONEIDA NATIONAL BANK, APPELLANT.

*Proof of claim against an insolvent corporation— the original debt, and also the amount of other obligations of the corporation given by it as security for the payment of the original debt, cannot both be proved.*

The Oneida National Bank held obligations against the corporation of E. Remington & Sons, upon some of which other parties, the Remington Agricultural Company and E. Remington, were also liable, amounting on their face to $43,077.50, which claims the bank was allowed, without objection, to prove before a referee appointed, after the appointment of receivers of the corporation, to take proof of claims against it.

The bank also held, as collateral security to such obligations of the corporation, and also of the obligations of the other parties who were liable with it, coupon notes, so-called, made by E. Remington & Sons, to the amount of $45,600, which the bank claimed the right to also prove as debts against that corporation. This claim to the amount, that other parties than the corporation were liable upon the paper representing the obligations, was allowed by the referee, but was disallowed by the court at Special Term.

Upon an appeal from an order sustaining certain exceptions taken by the receivers to the report of the referee thus appointed to take proof of claims against the corporation:

*Held,* as the coupon notes carried with them no lien on the property of the corporation, that the bank should not be allowed to prove the amount of such coupon notes, in addition to the debts for which they were held as collateral; that this would, in effect, be proving the actual debts twice.

That as the bank had once proved its entire debt, including the obligations upon which the Remington Agricultural Company and E. Remington were liable, it had no right to prove, in addition thereto, the coupon notes.

APPEAL by the Oneida National Bank of the city of Utica, creditor of the defendant corporation of E. Remington & Sons, from certain portions of an order granted at a Special Term, held in Onondaga county, which was entered in the office of the clerk of Herkimer county on the 5th day of June, 1889.

The defendant "E. Remington & Sons" was a manufacturing corporation, organized in 1861. On the 21st April, 1886, it was insolvent, and at that date, in an action brought for its dissolution, temporary receivers of its property and effects were duly appointed,

and on the 5th of June, 1886, judgment was entered in the action dissolving the corporation and making the receivership permanent.

On the 21st of April, 1886, the Oneida National Bank held obligations against the corporation amounting, at their face value, to $43,077.50 which represented actual debts. Of this sum there were drafts drawn by E. Remington & Sons upon its New York house and indorsed by Philo Remington —

| | |
|---|---:|
| Amounting to.................................. | $26,477 50 |
| Note made by the "Remington Agricultural Company," and indorsed by E. Remington & Sons and by Philo Remington.......................... | 3,500 00 |
| Note of Philo Remington, indorsed by E. Remington & Sons............................. ............. | 7 500 00 |
| Notes and checks of E. Remington & Sons upon which neither the Remington Agricultural Company nor Philo Remington were parties.......... | 5,600 00 |
| Total.......................................... | $43,077 50 |

These claims the bank was allowed to prove before the referee without objection. The bank also held as collateral security coupon notes, so-called, made by E. Remington & Sons to the amount of $45,600. These the bank claimed also the right to prove as debts against E. Remington & Sons. The referee allowed the claim, but at Special Term it was disallowed. These coupon notes came to the bank in the following manner: On the 27th of January, 1880, the bank held, as collateral security for certain paper, coupon bonds of the corporation E. Remington & Sons to the amount of $45,600, which were secured by mortgage executed by E. Remington & Sons to trustees, and covering certain real estate and other property of the corporation. At that date, at the request of the bank, E. Remington & Sons executed and delivered to it an instrument in writing certifying " that any collaterals you now have in your possession are considered by us as a continuous security for any paper made by us or any drafts drawn by us upon our customers, or any indorsements made by us on paper discounted by you. In other words, it is intended that you hold all collaterals as a security, not only for the old loan

but any other loan you have made or may hereafter make to us."
From the 27th of January, 1880, to May 28, 1883, the bank
continued to hold these bonds as such collateral. The original
amount of bonds under the mortgage was $900,000, but they were
not all issued, and on the 28th of May, 1883, the amount outstanding
was about $400,000. In November, 1882, the corporation, finding
itself embarrassed by the lien of the mortgage, proposed to the bond-
holders, including the bank, to cancel and retire the bonds and the
mortgage and to take and accept in lieu thereof notes of the corpora-
tion for a like amount, having interest coupons attached, the notes
to be dated November 1, 1882, and payable May 1, 1890, with
interest semi-annually. This proposition was accepted and the bonds
and the mortgage were canceled and coupon notes taken in lieu
thereof.

The scheme also contemplated the funding, by two-thirds of the
unsecured creditors, of their indebtedness, in said coupon notes,
which was also done. The agreement which was signed by the
bondholders also provided that the stockholders of the corporations
should assign $900,000 of the stock to certain persons in trust to
hold as collateral security for the payment of the coupon notes, and
with full power to vote at meetings of stockholders. The total
stock of the corporation was $1,000,000. At the time the bank
signed the agreement and surrendered its mortgage bonds E. Rem-
ington & Sons, the Remington Agricultural Company and Philo
Remington executed and delivered to it an instrument in writing,
dated May 28, 1883, reciting that the bank had from time to time
discounted notes and other commercial paper of and for E. Reming-
ton & Sons and the Remington Agricultural Company, more or less
of the paper being indorsed by P. Remington, and that the bank then
held and for some time had held, as collateral security for said notes
or other evidences of debt, mortgage bonds of E. Remington & Sons
which the said parties desired to have the bank surrender for coupon
interest notes of E. Remington & Sons for the same amount, and
thereupon requesting the bank to deliver up the mortgage bonds
"and hold as unconditional collateral security for any and all
indebtedness of whatsoever character of E. Remington & Sons, or
the Remington Agricultural Co., or Philo Remington, without
regard to who the said paper has been discounted for, the above

mentioned interest coupon notes in the place of and for the same purposes as you have heretofore held the above-named mortgage bonds, and this shall be your voucher for the surrender of the said mortgage bonds." Upon the delivery of this instrument, the bank surrendered its bonds and received coupon notes to the same amount, $45,600, which it has since held under said instrument, and they are all unpaid.

The Remington Agricultural Company was a partnership composed of Philo Remington, Samuel Remington and Eliphalet Remington, who also held stock of E. Remington & Sons to the amount of $900,000. All of the stockholders and trustees of E. Remington & Sons had knowledge of the proposed general exchange of the mortgage bonds for the coupon notes, and of the proposed general object of such exchange, and the coupon notes were issued with their knowledge, consent and direction, and pursuant to resolution of the trustees to that effect, dated November, 22, 1882. It appeared that the bank in the negotiations for the exchange made it a condition that the coupon notes should be held by it as collateral security not only for obligations of E. Remington & Sons, but also for obligations of the Remington Agricultural Company and Philo Remington.

*F. G. Fincke,* for the Oneida National Bank, appellant.

*Thomas Richardson,* for the receivers, respondents.

MERWIN, J.:

It will be observed that E. Remington & Sons are liable upon all the obligations representing the actual debts, making up the aggregate of $43,077.50, held by the bank and proved, without objection. Such liability to the extent of $11,000 is as indorser and on the balance as maker.

The Remington Agricultural Company and P. Remington are neither of them liable on $5,600, they are liable, one or the other, on the balance. The referee held that the coupon notes of the corporation did not constitute a valid security for the payment of its own indebtedness and applied this rule to the $5,600. He also held that they did constitute a valid security for the liabilities of the Remington Agricultural Company and P. Remington on the balance of the

claims of the bank, and could be proved by the bank, as such, in addition to the amount of the claims themselves. The ruling as to, the $5,600 was acquiesced in by the bank. The ruling as to the other was excepted to by the receivers and this exception was sustained by the Special Term. So that the question is, can the bank, by reason of its holding the coupon notes as collateral security for any obligations against the Remington Agricultural Company or P. Remington, prove the amount of such notes in addition to the debts for which they are held as collateral? This would, in effect, prove the actual debt twice. The coupon notes carried with them no lien on the property of the corporation. There was an arrangement by which certain stock of the corporation was to be held as collateral, and which, perhaps, by the opportunity which it gave to control the management of the corporate business, furnished a consideration or object for the exchange of mortgage bonds for coupon notes. Whatever benefit there was in this might be realized by the holder of such notes as collateral. He would, however, have no claim on the property of the corporation beyond the amount of his actual debt. The coupon notes were only personal obligations. The bank had certain obligations against the insolvent corporation, partly as maker and partly as indorser, which it has proved for the full amount of its debt. It has another form of obligation against the same corporation for the same debt. This does not increase, as against other creditors, the amount of the indebtedness. Being once proved the right of the claimant in that regard is exhausted. It is not a question as to the adjustment of specific liens, but simply to ascertain the amount, in fact, of the debts of the corporation, preparatory to a "just and fair distribution of the property of the corporation, and of the proceeds thereof, among its fair and honest creditors." (Code Civ. Pro., § 1793.) As said in *Third National Bank* v. *Eastern Railroad* (122 Mass., 242), "a debtor's liability to his creditor, where other creditors are concerned, is not increased by increasing the number of his promises to pay the same debt, in whatever form he may make them. To hold otherwise would be to enable the debtor to incumber his assets by a new method, greatly to the prejudice of all other creditors."

We think that the appellant, having once proved its entire debt, including the obligations upon which the Remington Agricultural

Company and P. Remington were liable, has no right to prove, in addition thereto, the coupon notes. The receivers attack the right of the bank to prove the coupon notes on the further grounds (1) that the bank had no right, in the consummation of the exchange of the mortgage bonds for the coupon notes, to stipulate that it might hold these notes as collateral for the debts of other parties, and thereby obtain an advantage to itself over and above what the others had under the agreement; and, (2), that such agreement on the part of the defendant corporation was *ultra vires*, it not appearing that all the stockholders assented. In view of the conclusion upon the other aspect of the case, it is not necessary to discuss those propositions.

· It follows that the order appealed from should be affirmed.

MARTIN, P. J., and PARKER, J. concurred.

Order affirmed, with ten dollars costs and disbursements, to be paid by the appellant.

